Filed 3/26/24  P. v. Adam CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>GRANT PARKER ADAM,<br><br>      Defendant and Appellant. | D082400<br><br><br>(Super. Ct. Nos. MH119725, CD296614) |

APPEAL from an order of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

After being found incompetent to stand trial and committed to a state hospital under Penal Code[1] section 1368, Grant Parker Adam appeals from a portion of the commitment order authorizing involuntary administration of antipsychotic medications.  Following our own recent decision rejecting many of the same claims of error in *People v. Garcia* (2024) 99 Cal.App.5th 1048 (*Garcia*), we find no error and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Adam was charged in a complaint filed in October 2022.  As amended in February 2023, the complaint charged him with making a criminal threat (§ 422; count one) while personally using a deadly or dangerous weapon, a knife (§ 12022, subd. (b)(1)); assault with a deadly weapon (§ 245, subd. (a)(1); count two); five counts of violating a protective order (§ 166, subd. (c)(1); counts three through seven); vandalism under $400 (§ 594, subd. (a)(b)(2)(A); count eight); three counts of attempted carjacking (§§ 664, 215, subd. (a); counts nine through eleven); resisting an executive officer (§ 69; count 12); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 13); and battery with serious bodily injury (§ 243, subd. (d); count 14).

Adam pled not guilty to all charges.  In January 2023, the trial court declared a doubt as to his competency to stand trial under section 1368.  The court suspended the proceedings and directed the performance of a mental health evaluation.

Dr. Benedetto Brunetto, a psychologist with the County of San Diego's Forensic Psychiatry Clinic, evaluated Adam on February 28, 2023 and filed two reports with the court.  In the first report, Dr. Brunetto

---

[1]     All further statutory references are to the Penal Code.

concluded that Adam was not competent to stand trial, and in the second, he recommended involuntary administration of antipsychotic medication.

Adam objected to Dr. Brunetto's findings. The court directed that Adam be reevaluated by another doctor.

Dr. Michael M. Takamura, a psychiatrist with the Forensic Psychiatry Unit, evaluated Adam on May 2, 2023 and filed two reports with the court. In the first report, Dr. Takamura concluded that Adam was not competent to stand trial, and in the second, he recommended involuntary administration of antipsychotic medication.

On May 8, 2023, the parties stipulated to the experts' qualifications and submitted the matter on their findings. The court received Dr. Takamura's reports into evidence. Based on Dr. Takamura's reports, the court found that Adam was not competent to stand trial and committed him to the state hospital for a maximum of two years. The court further ruled: "And pursuant to the recommendation of Dr. Takamura, the court authorizes the involuntary administration of antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist, any facility housing the defendant." After the court made its ruling, defense counsel requested that Dr. Brunetto's reports be admitted into evidence as well. The court granted the request.

The court filled out and signed a preprinted superior court form entitled Judgment of Mental Incompetency and Order for Commitment. The form had four different boxes for court findings relating to antipsychotic medication. The first box (left unchecked) was for administering the medication with the defendant's consent. The other three boxes corresponded to the different statutory grounds for ordering involuntary administration of antipsychotic medication: (1) serious harm to the defendant's physical or

3

mental health; (2) danger to others; or (3) restoration to competency for a serious crime against person or property. (§ 1370, subd. (a)(2)(B)(i)(I-III).) The court checked only the first of these three boxes, thereby making the following findings: "The defendant lacks capacity to make a decision regarding antipsychotic medication. The defendant's mental disorder requires medical treatment with antipsychotic medication, and if the defendant's mental disorder is not treated with anti-psychotic medication, it is possible that serious harm to the physical or mental health of the patient will result."[2]

## DISCUSSION

On appeal, Adam does not contest the trial court's finding of incompetence to stand trial or his commitment. He only challenges the order authorizing involuntary administration of antipsychotic medication. Adam argues that substantial evidence does not support the medication order because: (1) there is insufficient evidence that his mental disorder requires treatment with antipsychotic medication; and (2) there is insufficient evidence that it is probable serious harm to his physical or mental health will result without the medication. Adam further argues that the trial court applied the wrong legal standard in making its order, and his counsel was ineffective in failing to object to the entry of the order. We address each of these arguments in turn.

---

[2] The People request judicial notice of a subsequent order of September 14, 2023 finding that Adam was then mentally competent, reinstating the criminal proceedings, and ordering his return to county jail. However, the People do not explain the relevance of this order to the issues on appeal and do not argue that it renders the appeal moot. (See § 1370, subd. (a)(2)(B)(iii) [order authorizing involuntary administration of antipsychotic medication remains in effect when defendant returns to county custody but shall be valid for no more than one year].) Accordingly, we deny the request for judicial notice.

4

A. *Substantial Evidence Supports the Order*

We recently decided a similar case involving the identical issues Adam raises here.  (*Garcia, supra,* 99 Cal.App.5th at p. 1054.)  As we did in *Garcia,* we will assume without deciding that the standard of proof for a section 1370 order authorizing involuntary administration of antipsychotic medication is clear and convincing evidence.  (*Ibid.,* fn. 2.)  Our substantial evidence review must take this heightened standard into account.  Accordingly, the question before us is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the facts required for such an order were true.  (*Id.* at p. 1054)

Section 1370 allows a trial court to authorize involuntary administration of antipsychotic medication to a defendant who is found incompetent to stand trial.  The statute has provisions permitting such an order in any of three circumstances.  (§ 1370, subd. (a)(2)(B)(i)(I-III).)  Here, the trial court only made findings under the first of these provisions, which states:  "Based upon the opinion of the psychiatrist or licensed psychologist offered to the court pursuant to subparagraph (A) of paragraph (2) of subdivision (a) of section 1369, [1] the defendant lacks capacity to make decisions regarding antipsychotic medication, [2] the defendant's mental disorder requires medical treatment with antipsychotic medication, and, [3] if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the defendant will result."  (§ 1370, subd. (a)(2)(B)(i)(I).)

Adam disputes only the second and third of these statutory requirements.  As to the third, the statute further states:  "Probability of serious harm to the physical or mental health of the defendant requires evidence that the defendant is presently suffering adverse effects to their

5

physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and their condition is substantially deteriorating. The fact that a defendant has a diagnosis of a mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant." (§ 1370, subd. (a)(2)(B)(i)(I).)

We conclude there is substantial evidence of each of the two elements disputed by Adam. First, the expert reports admitted into evidence support the trial court's finding that Adam suffered from a mental disorder requiring medical treatment with antipsychotic medication. According to the reports, Adam has a history of mental illness, including bipolar disorder, psychosis, anxiety, and posttraumatic stress disorder (PTSD). He admitted he had a prior psychiatric hospitalization for psychosis in 2017. Several previous criminal cases against him in Minnesota were resolved with court orders for psychiatric and substance abuse treatment. In his interviews with the two mental health experts, Adam exhibited paranoid, grandiose, and delusional thinking. According to the jail records for March 8, 2023, Adam had been "in the medical ward, because of head banging." While in jail for the current offenses, he was diagnosed with unspecified psychotic and mood disorders and bipolar disorder, and he started taking Zoloft for PTSD and Zyprexa for mood/psychosis.

In his own evaluation, Dr. Takamura diagnosed Adam with bipolar disorder, PTSD, and anxiety disorder. Based in part on his own interactions with Adam, he concluded that although Adam's mental health had improved while in jail, he still suffered from paranoid and delusional thinking that could interfere with his factual understanding of the charges and his ability to cooperate with his attorney in the preparation of a rational defense. Dr. Takamura recommended that Adam be found incompetent to stand trial

6

because of his "ongoing bipolar and psychotic impairments." Dr. Takamura further recommended involuntary antipsychotic medication and stated that "antipsychotic medications are in the patient's best medical interest in light of his current condition." Dr. Brunetto agreed that Adam was "suffering from a severe mental disorder which requires medical treatment with antipsychotic medication."

Taken in its totality, this evidence was sufficient to establish that Adam suffered from a mental disorder requiring medical treatment with antipsychotic medication. (§ 1370, subd. (a)(2)(B)(i)(I).) In fact, the trial court could reasonably have inferred that Adam's mental condition improved in the two months between Dr. Brunetto's evaluation and Dr. Takamura's evaluation precisely because he had started taking Zyprexa (an antipsychotic medication) one week after Dr. Brunetto's evaluation.

Adam argues that Dr. Brunetto's opinion exceeded the scope of his license in violation of section 1369, subdivision (a)(2)(B), and Dr. Takamura's opinion lacked certain information required by the same provision. We rejected identical arguments made by the defendant in *Garcia*. (*Garcia*, *supra*, 99 Cal.App.5th at p. 1057.) We adopt the *Garcia* holding and reasoning as our own. Dr. Takamura gave the same opinion as the psychiatrist in *Garcia*, which we found to be proper under sections 1369 and 1370. (*Id*. at p. 1059.)

Second, the evidence was sufficient to support a finding that if Adam's mental disorder was not treated with antipsychotic medication, it was probable that serious harm to his physical or mental health would result. Immediately before Adam was put on Zyprexa in the jail, he was in the medical ward "because of head banging." According to his mother, Adam had a history of suicide attempts as a teenager. According to Dr. Brunetto's

7

report, Adam was "paranoid and manic" when he committed the charged assault on his mother with a kitchen knife in October 2022. Dr. Takamura concluded that Adam was still suffering symptoms of paranoia, delusion, and grandiosity—satisfying the statutory requirement that he was "presently suffering adverse effects to [his] physical or mental health . . . ." (§ 1370, subd. (a)(2)(B)(i)(I).) In the opinions of both experts, based on their evaluations of Adam and the materials they reviewed, it was "likely" or "probable" that Adam would suffer serious harm to his physical or mental health without appropriate treatment with antipsychotic medication.

These expert opinions are adequately supported by the record and provide substantial evidence that the statutory serious harm condition was satisfied. (*Garcia, supra*, 9 Cal.App.5th at p. 1056 [holding that similar expert reports provided substantial evidence of the same statutory condition and rejecting argument that they contained only " 'conclusory, perfunctory language' regarding the likelihood of serious harm to Garcia"].) For the reasons explained in *Garcia*, we also reject Adam's contention that reliance on his mental health symptoms violates the statutory mandate that a diagnosis of mental disorder alone does not establish a probability of serious harm. The statute "does not preclude using symptoms of the diagnosis to show adverse effects to [the defendant]'s health to establish a probability of serious harm." (*Ibid.*)

B. *The Error on the Superior Court Form Was Harmless*

Adam also argues that the trial court applied the wrong legal standard in making the serious harm determination because of an error on the preprinted superior court form used for the order. Specifically, the court checked a box on the form stating that without antipsychotic medication, "it is *possible* that serious harm to the physical or mental health of the patient

8

will result." (Italics added.) Adam argues this was error because the statute requires a finding that "it is *probable* that serious harm to the physical or emotional health of the defendant will result." (§ 1370, subd. (a)(2)(B)(i)(I), italics added.)

In *Garcia*, we found the identical error on the same form to be harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24. (*Garcia*, *supra*, 99 Cal.App.5th at p. 1059.) We noted that the trial court based its findings on the expert reports, and "[t]heir findings and conclusions would have equally supported the court's order if it had stated serious harm was 'probable,' rather than merely 'possible.' " (*Id.* at p. 1060.)

Likewise, the trial court here based its order authorizing antipsychotic medications on the recommendation of Dr. Takamura. In his recommendation for antipsychotic medications, Dr. Takamura stated that without the appropriate treatment, "it is *probable* that continuous serious harm could come to [Adam's] physical and/or mental health." (Italics added.) Because the trial court relied on Dr. Takamura's recommendation in making its order, and Dr. Takamura's opinion was that serious harm was probable rather than merely possible, "the form order's error was harmless beyond a reasonable doubt." (*Garcia*, *supra*, 99 Cal.App.5th at p. 1060.)

C. *There Was No Ineffective Assistance of Counsel*

Finally, Adam argues that his attorney was ineffective because he failed to object to the involuntary psychiatric medication order. (*Strickland v. Washington* (1984) 466 U.S. 668.) Once again, we rejected the identical claim in *Garcia*. (*Garcia*, *supra*, 99 Cal.App.5th at p. 1060.) As we have explained, the expert reports provided substantial evidence to support the trial court's order. There was no contrary evidence and Adam offers no persuasive reason why the trial court would have viewed the issue any

9

differently if his counsel had objected.  As in *Garcia*, therefore, Adam "has not established a reasonable probability that a different result would have occurred if [his] trial counsel had objected."  (*Ibid*.)

DISPOSITION

The commitment order is affirmed.

BUCHANAN, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.